**IN THE COURT OF APPEALS OF IOWA**

No. 24-1069
Filed October 30, 2024

**IN THE INTEREST OF B.C., A.C., J.C., and E.C.,**
    **Minor Children,**

**A.C., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Clay County, Andrew Smith, Judge.

A father appeals a juvenile court bridge order. **AFFIRMED.**

Michael Sandy of Sandy Law Firm, Spirit Lake, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Debra S. De Jong, Orange City, attorney and guardian ad litem for minor children.

Considered by Chicchelly, P.J., and Buller and Langholz, JJ. Sandy, J., takes no part.

**BULLER, Judge.**

A father appeals a bridge order placing physical care of his four children with their mother before transferring jurisdiction to the district court. Finding placement with the mother is in the children's best interests, we affirm.

## I.      Background Facts and Proceedings

A.C. (the father) and K.C. (the mother) had been married for around fifteen years. In September 2022, the mother alleged the father physically assaulted her, and then she moved out with their four children. In October, the father did not return the youngest child, E.C., at the end of a visit. A few days later, the father tried to pick up the oldest child from school, but she refused to go with him, and the school called law enforcement. He later tried to pick up the middle two children from school, and again law enforcement was called to remove the father from the premises.

A report to the Iowa Department of Health and Human Services (HHS) alleged the father had been using methamphetamine, including while he was caretaker for the four children. The mother told the HHS investigator that the father had threatened to kill himself on multiple occasions after she moved out with the children in September—including once when he showed up at her parents' house and held a gun to his head. She also reported the children had seen the father push and hit her and that he was controlling. The three older children expressed concern to HHS that the father would come take them away. They also corroborated domestic violence in the home.

The father denied using methamphetamine and perpetrating domestic violence. Over the life of the case, he tested positive once for methamphetamine

use, missed one test, and refused one (complaining that it was a hair test instead of a urinalysis). The father blamed a medication he was taking for the positive test result, but the lab reported none of his medications would cause a positive result for methamphetamine. The father also claimed the mother was using methamphetamine, but she tested negative. Despite the positive test result and a recommendation for substance-abuse treatment, the father did not engage with substance-abuse services.

The court ordered the removal of the children from the father's custody and placed them with their mother. The father's visits briefly progressed to semi-supervised in May, but he failed to properly supervise the children—falling asleep and leaving the children unsupervised and not appearing to be home for a later visit—so they returned to fully supervised. Throughout the case, the oldest child refused to visit the father. The middle two children sometimes attended visits, but not all of them. The father did not always react well to the HHS worker or parenting suggestions, which sometimes resulted in him being aggressive with workers. The father attended mental-health treatment with a couple different providers, but he limited what the providers were able to share with HHS. The guardian ad litem (GAL) noted: "It is pretty clear that the children hear negative things in both homes about the other parent and that the relationship with the other parent is not encouraged and supported the way it should be."

In early 2023, the mother petitioned for dissolution of her marriage to the father. The court entered a decree in May, but it did not address custody or visitation issues. The mother applied for a bridge order to establish custody, physical care, and visitation between the parents.

HHS supported the entry of a bridge order "with specific steps and guidelines for [the father] to follow in order to continue to progress from supervised visits to unsupervised visitation."  The children's GAL also recommended the mother receive physical care and visitation for the father.  The GAL suggested "some level of supervision and/or drop ins at first," phone rights for the children during visits, and a mechanism for drug test requests.  In the GAL's estimation, the father "clearly loves his children" but "has not always made the best choices."

After a hearing, the juvenile court entered a bridge order.  The court observed: "The parents have not demonstrated any ability to coparent or to set aside their antagonistic relationship for the benefit of their children."  And the court found it was "unclear" whether the father fully participated in any recommended services, as he had been discharged from mental health services "due to a lack of follow-through."  The court determined it could not conclude the need for removal would cease within six months, the general requirements for establishing a bridge order had been met, and "there is no ongoing purpose for continued court oversight."  The court denied the father physical care because he was still on supervised visitation and had not properly addressed substance-use and mental-health concerns.  Instead, the court ordered joint legal custody, physical care to the mother, and increasing visitation time with decreasing supervision based on the father completing substance-use and mental-health evaluations and complying with recommendations.

The father appeals, claiming it is in the children's best interests for him to have physical care of the children, or the parents should share care.  We review his claims de novo.  *In re D.D.*, 955 N.W.2d 186, 192 (Iowa 2021).

## II.    Discussion

A bridge order transfers "jurisdiction over the child[ren]'s custody, physical care, and visitation to the district court" and closes a CINA case when certain criteria have been met.  Iowa Code § 232.103A(1) (2024).  The father does not contest this case meets the requirements for a bridge order.  He only challenges the physical-care determination from that order.  *See id.* § 232.103A(3).

Physical-care determinations are made based on the best interests of the child, not perceived fairness to the parents.  *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).  When evaluating the possibility of shared physical care, considerations include: (1) whether both parents have historically contributed equally to physical care, (2) if the spouses can "communicate and show mutual respect," (3) "the degree of conflict between parents," and (4) whether "the parents are in general agreement about their approach to daily matters*." Id.* at 698–99. The parents here exhibit a high level of conflict and have no ability to communicate respectfully with each other.  We agree with the juvenile court that the "antagonistic relationship" and communication problems "preclude[] any consideration of joint physical care."

When considering the father's request for physical care of all four children, the court found it would not be in the children's best interests, given the "supervised visitation, unaddressed substance abuse issues, and no indication that mental health concerns are being properly addressed."  Meanwhile, the court observed: "The parties, other than [the father], all appear to agree, and evidence supports, that the children are safe in [the mother]'s care."  We agree with this observation based on our own review of the record.

"The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Hansen*, 733 N.W.2d at 695. The General Assembly has provided a non-exclusive list of factors to consider in custody arrangements, including their suitability as custodian, the child's "psychological and emotional needs and development," the parent's support of the child's relationship and communication with the other parent, and the child's wishes (considering age and maturity). Iowa Code § 598.41(3). Here, we find it significant the oldest child has refused visitation for almost the entire CINA case, and the two middle children have refused visitation at various times based at least in part on the father's behavior toward others. We also recognize the father has not shown any inclination to communicate with the mother or support her as a mother in front of the children. Despite claiming he is involved in continuing therapy, the father has had multiple outbursts against case workers in front of the children, and we see no evidence he has meaningfully engaged with services to address his past substance abuse.

We affirm the juvenile court's physical-care decision and the bridge order.

**AFFIRMED.**